Filed 3/26/21  P. v. Sainz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARLOS HECTOR SAINZ,<br><br>    Defendant and Appellant. | D077858<br><br><br>(Super. Ct. No. CR86492) |

APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Lynne G. McGinnis, and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

In 1987, a jury convicted Carlos Hector Sainz of second degree murder (Pen. Code,[1] § 187) and found that he used a firearm during the commission of the offense (§ 12022.5). He was sentenced to an indeterminate term of 17 years to life in prison.

Sainz appealed, and this court affirmed his conviction in an unpublished opinion. (*People v. Sainz* (Sep. 18, 1989, D007230) [nonpub. opn.] (*Sainz*).)

In 2019, Sainz filed a petition for resentencing under newly enacted section 1170.95. By checking the boxes on the form, Sainz alleged he had been convicted of second degree murder on a theory of felony murder and on a theory of natural and probable consequences. Sainz alleged he could not now be convicted of the offense due to the modification of sections 188 and 189 contained in Senate Bill No. 1437.

The trial court appointed counsel and received briefing from both parties.[2] After a review of the record of conviction and this court's prior opinion, the trial court denied the petition. The court found from the record that Sainz was not prosecuted on either a felony murder theory or a theory of natural and probable consequences. The court found the record established the undisputed fact that Sainz fired five shots into a crowd at a party and that he thereafter loaded the same gun and gave it to an accomplice who fired more shots at the crowd. It was undisputed the victim died as a result of being hit with a bullet from the gun. The court noted the facts established Sainz as the actual killer or that he provided the loaded gun to an accomplice

---

[1]    All further statutory references are to the Penal Code.

[2]    The Attorney General filed a request for judicial notice of the record from the original trial that we considered in *Sainz, supra*, D007230. We have granted the request in a separate order filed February 11, 2021.

who fired more shots. Under either theory, Sainz was not eligible for relief under section 1170.95. The court held Sainz had failed to provide prima facie showing of eligibility.

Sainz appeals, contending the court erred in summarily denying his petition. He argues the court erred in considering the record of conviction and the opinion of this court. We recognize our Supreme Court has a number of cases before it dealing with the process that must be followed in ruling on petitions under section 1170.95. Pending further direction from the high court, we must endeavor to resolve the issues before us. On this record, we are satisfied the court correctly reviewed the record and, using readily ascertainable facts, properly determined Sainz had not presented a prima facie case. Thus, summary denial, without an order to show cause, was proper. We will affirm the denial.

STATEMENT OF FACTS

We recite the facts as they are contained in *Sainz*, *supra*, D007230 at pages 1 through 4.

On February 13, 1987, Sainz, who was from Pasadena, was visiting Gerardo Vizcarra, who had moved from Pasadena to Chula Vista. Sainz and Vizcarra went to Mario Oceguara's house in Chula Vista, where Sainz showed Oceguara, Vizcarra and Jose Cortez his gun, a dark .38 caliber five-shot revolver. The revolver had been stolen a few days before from a car parked in El Monte, a city about five miles from Pasadena.

Between 6:00 and 7:00 p.m., Sainz, Vizcarra, Oceguara and Cortez went to Daniel Gomez's house and decided to drive to the house of Gomez's girlfriend, Sonia Viragus. When they arrived, Viragus asked Gomez to drive her[ ] and her two girlfriends to a party. Gomez agreed.

3

The group arrived at the party between 9:00 and 10:00 p.m. Gomez parked across the street. At Viragus's request, the host, Dushaun Fairley, allowed the group to attend the party. About an hour after their arrival, an argument developed between Fairley's friends and Sainz's group [about] whether Sainz's group should be charged for beer. The argument became heated and Fairley asked Sainz, Vizcarra, Oceguara, Cortez and Gomez to leave. As the group was leaving, someone threw a bottle toward Cortez and a fist fight developed near the gate to the Fairley residence between Cortez and three of Fairley's guests—Juan Casasus, Paul Casasus and Ruben Aracio. Intending to involve himself in the fight, the victim, Tony Penalosa, stepped through the gate. Gomez, or someone else in Sainz's group, yelled "Cap on them. Bust them" or words to that effect.[3] Sainz began firing into the crowd. He fired about five shots. When Fairley's guest Araico heard the first shot, he jumped aside and attempted to seek a safe haven in the back yard. He bumped into Penalosa, and off-balance, Araico fell. As Araico fell during the second gunshot, he saw Penalosa "coming back with his hands out in the air in front of him, and [fall] to the ground, straight back. And he landed with his hands on his forehead." Another of Fairley's guests, Salvador Almaraz, saw Penalosa "fly back, straight back" after the first or second shot. Vizcarrra testified he saw Penalosa on the ground after the third shot. Penalosa died of a gunshot wound to the head.

While firing his gun, Sainz backed down the driveway toward the street and attempted to reload the gun. Gomez and Oceguara had run to Gomez's car. Vizcarra, seeking to assist Cortez, obtained the gun from Sainz and ran

---

[3]     Fairley testified "cap on them" and "bust them" are slang terms meaning "shoot somebody."

back up the driveway. Vizcarra testified he "ran up, started shooting in the air, trying to scare these guys off of Jose."

Vizcarra, Cortez and Sainz ran to Gomez's car and the group left the scene. In the car, Sainz said, "Yeah, I got him, Gerardo. I got him." Vizcarra handed the gun to Sainz and urged him to "get rid of it." Sainz answered, "It's going back to Dean Dena Land," i.e., back to Pasadena. After stopping to buy beer, the group drove to Gomez's house in Chula Vista.

Vizcarra and Cortez, fearing the imminent arrival of the police, departed immediately. Sainz asked Gomez to hide the gun and attempted to hand it to Gomez. When Gomez refused, Sainz threw the gun to the floor and left. Gomez picked up the gun and hid it in the attic.

Coming down from the attic, Gomez saw Sainz and Oceguara running away. He joined them and the three went to a neighbor's house. While they watched a movie at the neighbor's house, the police arrived at Gomez's residence. The neighbor asked Gomez why the police were there. Gomez claimed not to know. Gomez went outside, approached the police, and identified himself as the resident of the premises. He was arrested. The police recovered the gun from Gomez's attic.

Originally, Gomez and Oceguara did not tell the police that Cortez and Vizcarra had been involved. At trial, Gomez, Oceguara and Vizcarra initially testified the only shooting had been done by Sainz but later took the stand and admitted Vizcarra also had the gun and fired some shots.

In his defense, Sainz attempted to show he did not shoot at the crowd, but over their heads and that the bullet which killed Penalosa may have been deflected down before striking him or might have been fired by Vizcarra.

DISCUSSION

Sainz argues the court erred in looking beyond his form petition to determine if he had demonstrated a prima facie case for relief. We believe trial courts are not required to blindly accept the petitioner's form allegations where there are readily ascertainable facts in the record which may, as they do in this case, demonstrate the allegations in the petition are simply not true.

A. Legal Principles

When a trial court receives a petition for relief under section 1170.95,[4] the court must determine whether the petitioner has made a prima facie

_____

[4] Section 1170.95 provides:

(a) A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.

(b) [¶] (1) The petition shall be filed with the court that sentenced the petitioner and served by the petitioner on the district attorney, or on the agency that prosecuted the petitioner, and on the attorney who represented the petitioner in the trial court or on the public defender of the county where the petitioner was convicted. If the judge that originally sentenced the petitioner is not available to resentence the petitioner, the presiding judge shall designate another judge to rule on the petition. The petition shall include all of the following: [¶] (A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel. [¶] (2) If any of the information required by this

6

subdivision is missing from the petition and cannot be readily ascertained by the court, the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information.

(c) The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.

(d) [¶] (1) Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence. This deadline may be extended for good cause. [¶] (2) The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing. If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner. [¶] (3) At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.

(e) If petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose.

(f) This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner.

show of eligibility for relief.  The court should appoint counsel and receive submissions from the People and from the petitioner.  (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975-976 (*Drayton*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327-328 (*Verdugo*), review granted Mar. 18, 2020, S260493.)

In conducting its review, the court can consider the record of conviction and the opinion of the court of appeal, if there has been a prior appeal.  The court may consider readily ascertainable facts from such record to determine if the petitioner has made the requisite prima facie showing.  (*Drayton*, *supra*, 47 Cal.App.5th at pp. 979-980.)  Where the readily ascertainable facts from the record of conviction establish, as a matter of law, that the petitioner is not eligible, the court may deny the petition without issuing an order to show cause.  (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330*; People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

## B.  Analysis

The records before the trial court demonstrate that Sainz was not prosecuted on a felony-murder theory or on a theory of natural and probable consequences arising from aiding and abetting another.  The jury was not instructed on either theory.  The case was prosecuted on the theory Sainz was an active participant in the actual killing.  The undisputed facts in the record show Sainz brought a five-shot revolver to the party he attended.  Following conflict with other party-goers, Sainz fired five shots at the crowd.  He reloaded the gun and gave it to an accomplice who again fired into the crowd.

It is undisputed that the victim was killed by a bullet from the gun fired by Sainz and his accomplice.  The evidence pointed to Sainz as the

---

(g) A person who is resentenced pursuant to this section shall be given credit for time served.  The judge may order the petitioner to be subject to parole supervision for up to three years following the completion of the sentence.

actual killer, but the defense claimed he fired over the heads of the crowd and that the accomplice must have fired the fatal round. However, as the trial court pointed out, Sainz is either the actual killer or the person who actively participated is the acts leading to death, and that he acted with disregard for human life.

Review of the record of conviction in this case does not require judicial factfinding. The court had before it the instructions and arguments given to the jury and well as the facts from this court's prior opinion. The qualifying allegations in the form petition filed by Sainz are clearly not true. None of the modifications to the definitions of malice addressed in Senate Bill No. 1437 are implicated by the record of conviction in this case.

The trial court did not err in denying the petition without issuing an order to show cause.

DISPOSITION

The order denying appellant's petition for resentencing under section 1170.95 is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.

9